**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **NAZANIN YAZDAN POURI**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> Defendants. | No. 26-cv-1339 |

<u>**MEMORANDUM OPINION**</u>

Plaintiff is an Iranian physician who lawfully resides in Norfolk, Virginia as a derivative beneficiary of her husband's student visa.  Decl. of Yazdan Pouri ¶¶ 1–2, ECF No. 4-1 ("Pouri Decl.").  She has been admitted to the family medicine residency program at Eastern Virginia Medical School, with orientation set to begin on June 10, 2026.  *Id.* ¶ 1.  On November 7, 2025, Plaintiff applied to become a permanent resident (Form I-485) and for employment authorization pending adjustment of status (Form I-765).  *Id.* ¶ 2.  But U.S. Citizenship and Immigration Services ("USCIS") has indefinitely suspended the adjudication of all benefit applications filed by noncitizens from 39 countries, including Iran.  As a result, Plaintiff has been unable to obtain the employment authorization needed to begin her residency.  *Id.* ¶¶ 3, 8.  She now moves for a preliminary injunction ordering Defendants to adjudicate her Form I-765 within seven days.  *See* Pl.'s Mot. for Prelim. Inj., ECF No. 4 (Pl.'s Mot.").  Defendants move to dismiss or to transfer the case to the District of Maryland.  *See* Defs.' Mot. to Dismiss or Transfer, ECF No. 7 ("Defs.' Mot.").  For the following reasons, the court will DENY Defendants' Motion to Dismiss or Transfer and GRANT Plaintiff's Motion for a Preliminary Injunction.

## I.    BACKGROUND

In June 2025, the President issued Presidential Proclamation 10949 and restricted the entry of noncitizens from 19 countries, including Iran.  *See* Restricting the Entry of Foreign Nationals to Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, 90 Fed. Reg. 24497 (June 4, 2025).  In December 2025, USCIS released a policy memorandum directing all agency personnel to "place a hold on pending benefit requests for [noncitizens] from countries listed in Presidential Proclamation 10949 . . . pending comprehensive review."  USCIS Policy Memorandum, PM-602-0192 (Dec. 2, 2025), https://perma.cc/M55Y-M7W4 ("December Memo").  Later that month, the President expanded entry restrictions to individuals from 39 countries in Presidential Proclamation 10998.  *See* Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States, 90 Fed. Reg. 59717 (Dec. 16, 2025).  The following January, USCIS updated its policy memorandum and expanded the adjudication hold to individuals from all countries listed in Presidential Proclamation 10998.  USCIS Policy Memorandum, PM-602-0194 (Jan. 1, 2026), https://perma.cc/YQX2-VFKD ("January Memo").  The memo states that a hold on benefit adjudication is necessary to conduct a review of screening procedures and ensure that noncitizens from those countries "do not pose a threat to national security or public safety."  *Id.* at 3.  As a result of this indefinite suspension, USCIS has not adjudicated Plaintiff's Form I-765 request for an Employment Authorization Document ("EAD") pending adjustment of status.  *See* Pouri Decl. ¶¶ 3–4.  Plaintiff will lose her residency if she does not have an EAD by June 10, which would constitute a significant personal, professional, and financial setback.  *See id.* ¶ 8.

## II.    ANALYSIS

### A.  Subject Matter Jurisdiction

Before it can address Defendants' transfer request, or any other issue, the court must first assure itself of subject matter jurisdiction.  That is because "a court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)."  *Integrated Health Servs. v. THCI Co.*, 417 F.3d 953, 957 (8th Cir. 2005); *see also* 15 Wright & Miller, Fed. Prac. & Proc. § 3844 (4th ed. 2026) ("If subject matter jurisdiction is lacking, Section 1404(a) provides no power to do anything with the case" except dismiss it.).

Defendants contend that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this court of subject matter jurisdiction over Plaintiff's challenge to the policy memos.  Defs.' Mot. at 17–18.  That provision specifies that "no court shall have jurisdiction to review . . . any . . . decision or action" entrusted to "the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  Defendants note that a decision to grant or deny a noncitizen's petition for adjustment of status is committed to agency discretion.  *See* Defs.' Mot. at 18 (citing 8 U.S.C. § 1255).  But Plaintiff does not challenge the discretionary denial of a petition for adjustment of status; instead, she seeks judicial review of USCIS's policy of categorically withholding action on such petitions.  *See* Pl.'s Mot. at 7.  And § 1252(a)(2)(B)(ii) "appl[ies] only to individualized immigration adjudications."  *Miot v. Trump*, 818 F. Supp. 3d 126, 153 (D.D.C. 2026).  It does "not prevent judicial review of a generally applicable" agency policy.  *Id.* (cleaned up); *see also Make the Road New York v. Wolf*, 962 F.3d 612, 630 (D.C. Cir. 2020) (noting that § 1252(a)(2)(B) bars "judicial review of challenges to orders denying discretionary relief," not "generally applicable rulemaking governing . . . procedures" (cleaned up)).

Nor does § 1252(a)(2)(B)(ii) bar a claim that USCIS has "fail[ed] to timely resolve" a petition for adjustment of status. *Ruhumuriza v. Higgins*, 2026 WL 587636, at *4 (D.D.C. Mar. 3, 2026). Again, such a claim does not challenge a discretionary decision by USCIS; it challenges the agency's failure to timely make one. *See id.*; *see also Venigalla v. USCIS*, 2026 WL 145601, at *4 (D.D.C. Jan. 20, 2026) ("Although this court might lack jurisdiction to review the discretionary denial of an equitable tolling request, the failure to consider such a request is not a discretionary decision over which the court lacks jurisdiction—it is a failure to make a discretionary decision altogether."). The court is therefore satisfied that it has subject matter jurisdiction over Plaintiff's challenge to the policy memos.

### B. Venue

Defendants argue that venue in this District is improper, and that even if it were proper, transfer to the District of Maryland would still be warranted. *See* Defs.' Mot. at 13–17. The court disagrees.

#### a. Venue is Proper.

Under 28 U.S.C. § 1391(e)(1)(A), a plaintiff may bring a civil action against "an agency of the United States" or "an officer or employee" thereof "acting in his official capacity" "in any judicial district in which . . . a defendant in the action resides." Plaintiff has named the Department of Homeland Security ("DHS") as a Defendant and there is no dispute that DHS is located in the District of Columbia. *See Rabelo v. Noem*, 2025 WL 3171005, at *2 n.4 (D.D.C. Nov. 13, 2025) ("Here, venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) because the Secretary of Homeland Security resides in the District of Columbia, where the Department is headquartered."). Defendants nevertheless contend that DHS should be dismissed from the suit because the Secretary has "delegated authority for processing and adjudicating immigration

applications to USCIS," which issued the policy memos under review from its headquarters in the District of Maryland, and with DHS dismissed, venue would no longer be proper.  Defs.' Mot. at 15; *see also Wei Lai Dev. LLC v. USCIS*, 2021 WL 2073403, at *3 n.5 (D.D.C. May 24, 2021) (noting that USCIS has relocated its headquarters to Camp Springs, Maryland and has had "no . . . headquarters level offices within the District of Columbia since December 11, 2020" (cleaned up)).

But Defendant cites no case law for the remarkable proposition that a parent agency is not a proper defendant when a plaintiff directly challenges the nationwide policy of a component agency.  *See* Defs.' Mot. at 14–17; *see also* Defs.' Reply at 2–3, ECF No. 10.  Instead, Defendant relies almost exclusively on *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993)—a case that is far afield.  There, a plaintiff sued federal officials, including the Attorney General, alleging that they failed to provide him a medically necessary low-sodium diet at his federal prison in Indiana.  *Cameron*, 983 F.2d at 254.  The D.C. Circuit transferred the case and warned courts in this Circuit to "guard against the danger that a plaintiff might manufacture venue in the District of Columbia" by "naming high government officials" like the Attorney General "as defendants" in cases with no "connection to the District of Columbia at all."  *Id.* at 256.

In *Cameron*, however, the plaintiff did not allege that the Attorney General or other officials in Washington "had participated in any decision or approved any policy that related to" the prisoner's treatment in Indiana.  983 F.2d at 258.  Instead, he relied "essentially on the bare assumption that policy decisions made in Washington might have affected [his] treatment" in Indiana.  *Id.*  Here, by contrast, Plaintiff challenges a nationwide policy which purports to implement Presidential directives.  *See* Compl. ¶¶ 33–43, 64–88.  And Plaintiff plausibly alleges involvement by DHS leadership in the decision-making, which is plainly a reasonable inference

considering the scope and magnitude of a policy indefinitely suspending benefits adjudication for the nationals of 39 countries. *See id.* at 1 (DHS and USCIS "have adopted a blanket policy of withholding adjudications of all benefit applications filed by individuals born in Iran"); *see also* Pl.'s Opp'n at 3, ECF No. 8; *Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petro. Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 78 (D.D.C. 2022) (In evaluating venue, the court "may consider material outside of the pleadings" as "petitioner is not required to address venue in its pleadings" because "venue is an affirmative defense"). In other words, this is not a case about a prisoner's diet in Indiana.

Defendants' reliance on *MVP Sports, Inc. v. Cissna*, 2020 WL 5816239 (D.D.C. Sept. 30, 2020) is similarly misplaced. There, a court held that "naming the director of an agency headquartered in this district does not alone anchor venue in the District of Columbia . . . when the named agency official was not personally involved in the challenged decision." *Id.* at *2 (cleaned up). But that case involved "the denial of [a] Form I-129 petition," a discrete decision made by lower-level USCIS officials in California. *Id.* at *1. In fact, the court specifically contrasted the case with one involving "a general, broad-based challenge to immigration policies or regulations," and acknowledged that venue could be proper in the District of Columbia under the latter circumstances. *Id.* at *2. Accordingly, Defendants' attempts to defeat venue fail to persuade.

> b. The Parties' Convenience and the Interests of Justice Do Not Favor Transfer.

A court may, in its discretion, transfer a civil action to any other district "for the convenience of parties and witnesses, in the interest of justice," if the transferee district is one where the case "might have been brought." 28 U.S.C. § 1404(a). But "the moving party 'bears a heavy burden of establishing that plaintiff's choice of forum is inappropriate.'" *Ruvulapalli v.*

*Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (quoting *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004)) (cleaned up).  That is in part because "courts normally afford substantial deference to the plaintiff's choice of forum," at least as long as the case bears "a significant nexus to the plaintiff's preferred forum."  *Barrera v. DHS*, 2021 WL 5992098, at *2 (D.D.C. Mar. 31, 2021) (cleaned up).

There is no question that this case "might have been brought" in the District of Maryland. 28 U.S.C. § 1404(a).  Because Defendant USCIS is located there, venue would be proper.  *See* 28 U.S.C. § 1391(e)(1)(A).  But Defendants have "not carried [their] burden to show that this case should have been filed" in Maryland.  *Barrera*, 2021 WL 5992098, at *2.  A balancing of the private and public interest factors demonstrate that this court should retain the case.

### i.  Private Interest Factors

The private interest factors weigh strongly against transfer.  To start, Plaintiff's "choice of forum must be afforded significant deference . . . because the District of Columbia is relevantly connected to the controversy."  *Defs. of Wildlife v. Salazar*, 2013 WL 12316872, at *3 (D.D.C. Apr. 11, 2013).  To be sure, USCIS is now headquartered in Maryland, and "a plaintiff seeking to sue federal defendants in Washington, D.C. must demonstrate some 'substantial personalized involvement by a member of the Washington, D.C. agency' before the court can conclude that there are meaningful ties to the District of Columbia."  *Western Watersheds Proj. v. Pool*, 942 F. Supp. 2d 93, 98 (D.D.C. 2013) (quoting *S. Utah Wilderness Alliance v. Lewis*, 845 F. Supp. 2d 231, 235 (D.D.C. 2012)) (cleaned up).  But Plaintiff has done so.  She has adequately demonstrated that senior DHS officials were substantially involved in this major, nationwide policy affecting noncitizens from 39 countries and which purports to implement Presidential directives.  *See infra* Part II.B.a.

Defendants cite cases like *Bourdon v. DHS*, 235 F. Supp. 3d 298 (D.D.C. 2017), for the proposition that courts in this district routinely transfer immigration-application cases to the judicial district in which the relevant USCIS field office is located.  But those cases are inapposite because they did not involve direct challenges to nationwide policies.  In *Bourdon*, for example, the "gravamen of Plaintiff's Complaint" was that the field office made "errors" in denying his immigration benefit application—errors "which took place entirely within the Southern District of Florida" and were, at most, possibly "influenced" by agency-wide policy memos.  235 F. Supp. 3d at 307.  Here, by contrast, a "nationwide" policy is "the primary reason" that adjudication of Plaintiff's application has been withheld.  *Barrera*, 2021 WL 5992098, at *3.  And as discussed above, this nationwide policy was "designed and shaped by officials . . . in Washington, D.C."  *Salha v. DHS*, 2020 WL 5505350, at *2 (D.D.C. Sept. 11, 2020).  Accordingly, Plaintiff's suit bears "a significant nexus to this forum."  *Barrera*, 2021 WL 5992098, at *3.

"The remainder of the private interest factors are of limited value in this case because Plaintiff's claims are primarily legal in nature and likely to be based solely on the administrative record."  *Otay Mesa Prop. LP v. Dep't of Interior*, 584 F. Supp. 2d 122, 125 (D.D.C. 2008) (cleaned up).  Thus, the District of Maryland would not somehow be more convenient for the Government's witnesses because the Government is unlikely to have any witnesses.  Nor is it inconvenient for Defendants to litigate in the District of Columbia, which is where DHS is headquartered and where both DHS and USCIS often litigate.  *See Defs. of Wildlife*, 2013 WL 12316872, at *4.  In sum, given the substantial deference to Plaintiff's choice of forum, the private interest analysis weighs against transfer.

ii. *Public Interest Factors*

"To determine whether transfer is in the public interest, the court must consider the following factors: (1) the transferee court's familiarity with the applicable law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 334 (D.D.C. 2020). On balance, these factors also weigh against transfer, but only slightly.

The first factor neither favors nor disfavors transfer. Although the "District of Columbia has more expertise" and familiarity "with [] Administrative Procedure Act cases than" many other districts, *FMC Corp. v. EPA*, 557 F. Supp. 2d 105, 112 (D.D.C. 2008) (cleaned up), both "the District of Columbia and the District of Maryland are . . . presumed competent in all matters of federal law." *Alakhfash v. Jaddou*, 2024 WL 5044926, at *4 (D.D.C. Sept. 23, 2024). And when, as here, "neither party contests that federal claims 'could be handled *competently* by a court in either district,' . . . this factor is neutral." *Wolfram*, 490 F. Supp. 3d at 335 (quoting *Aishat v. DHS*, 288 F. Supp. 3d 261, 271 (D.D.C. 2018)) (emphasis in original).

The second factor—the relative congestion of each court—weighs slightly against transfer. In 2023, the "District of Maryland maintain[ed] more cases per judge," and the median time from filing to disposition of civil cases in the District of Maryland was nearly twice as long as it is in the District of Columbia. *Alakhfash*, 2024 WL 5044926, at *4 n.1.

The third factor—"the local interest in deciding local controversies at home"—is "perhaps most important amongst the public [interest] factors." *Wolfram*, 490 F. Supp. 3d at 338. Several considerations indicate that the District of Columbia has a local interest in this controversy. First, although "the challenged decision was made" by USCIS in the District of Maryland, at least formally, "there was personal involvement" by a senior official based in the

District of Columbia—the Secretary of Homeland Security. *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 84 (D.D.C. 2009) (quoting *Otay Mesa Prop.*, 584 F. Supp. 2d at 126). Plaintiff does, after all, challenge to a prominent nationwide policy which seeks to implement policy goals articulated across two Presidential Proclamations—not the adjudication of a single person's benefits application. *See Alakhfash*, 2024 WL 5044926, at *5; *see also Aftab*, 597 F. Supp. 2d at 84 (asking whether "the controversy has some national," as opposed to purely local, "significance" (cleaned up)); *Rossville Convenience & Gas, Inc. v. Barr*, 453 F. Supp. 3d 380, 389 (D.D.C. 2020) ("[T]here is also some interest in Washington, D.C. as the seat of the federal government, where immigration policy is often developed and enforced."). The District of Maryland, by contrast, has no more a local interest than this district in adjudicating a challenge to a nationwide policy brought by a resident of Virginia. Consequently, Defendants have failed to meet their "heavy burden of establishing" that this case should have been brought elsewhere. *Ruvulapalli*, 773 F. Supp. 2d at 55. Their Motion to Dismiss or Transfer will therefore be DENIED.

### C. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008)) (cleaned up). Plaintiff has done so here.

a. <u>Likelihood of Success on the Merits</u>

Plaintiff is likely to succeed on her claim that her Form I-765 application has been unreasonably delayed pursuant to an indefinite suspension policy that is arbitrary and capricious.

        *i.  APA Reviewability*

Defendants first contend that Administrative Procedure Act review is not available for Plaintiff's challenge to the hold on Form I-765 applications.[1]  *See* Defs.' Mot. at 19–20.  As they note, the APA does not provide for judicial review of agency action that is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  In other words, APA review is unavailable "where the relevant statute [or regulation] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion" and consequently "no law to apply." *Dep't of Comm. v. New York*, 588 U.S. 752, 772–73 (2019) (cleaned up).  Defendants further point out that federal law places the adjudication of Form I-765 applications "within the discretion of USCIS."  8 C.F.R. § 274a.13(a)(1).

But although at least one court in this district has held that "approving or denying the I-765 application, establishing the length of the [employment authorization] period, and deciding whether to extend the [] period . . . are decisions committed to USCIS's discretion and outside the purview of judicial review," *Kondapally v. USCIS*, 557 F. Supp. 3d 10, 26 (D.D.C. 2021), this case does not involve any such decision.  There has been no adjudication of a Form I-765 application at all.  To the contrary, this case challenges a policy which indefinitely suspends such adjudication.  *See Bowser v. Noem*, 2026 WL 555624, at *3 (D. Mass. Feb. 27, 2026) (Plaintiffs "do not contest the adjudication of their applications . . . for employment authorization; instead,

---

[1]  Contrary to Defendants' assertion, "Section 701(a)(2) of the APA is not . . . a jurisdictional bar."  *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097 (D.C. Cir. 2015).

To the extent Defendants argue that the policy memos are not final agency action in their reply brief, *see* Defs.' Reply at 4–5, that argument is forfeited.  *See Vasquez v. District of Columbia*, 110 F.4th 282, 288 n.1 (D.C. Cir. 2024) ("Arguments raised for the first time on reply are forfeited."); *see also El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011) (explaining that the APA's final agency action requirement is not jurisdictional).

they seek review of the *failure to adjudicate* the applications.").  And there is plainly law to apply to Plaintiff's claim that her application has been unreasonably delayed pursuant to an arbitrary and capricious policy.  *See Seeger v. Dep't of Def.*, 306 F. Supp. 3d 265, 283 (D.D.C. 2018) (rejecting the argument that there was no law to apply as "nonsense" because the "arbitrary and capricious standard of the APA is well established"); *see also Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (establishing a well-known six-factor test for evaluating claims of unreasonable delay).  APA review is therefore available.

### ii.  *Arbitrary and Capricious*

This court joins a chorus of others in holding that the challenged policy memos are likely arbitrary and capricious.  *See, e.g.*, *Bowser v. Noem*, 2026 WL 555624, at *6–9 (D. Mass. Feb. 27, 2026); *Saghafi v. Edlow*, 2026 WL 1127468, at *8–10 (D. Md. Apr. 24, 2026); *Varniab v. Edlow*, 2026 WL 485490, at *18–20 (N.D. Cal. Feb. 20, 2026).  Notably, Defendants do not even attempt to defend the reasoning of those memos.  *See* Defs.' Opp'n at 20–21, ECF No. 6.

The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious."  5 U.S.C. § 706(2)(A).  Although "the arbitrary and capricious standard is 'deferential,'" it still "requir[es] that agency action be 'reasonable and reasonably explained.'"  *Ramsingh v. TSA*, 40 F.4th 625, 631 (D.C. Cir. 2022) (quoting *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 409 (D.C. Cir. 2020)) (cleaned up).  "[T]he agency must . . . articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (cleaned up).  Moreover, although agencies "are free to change their existing policies," they must at least acknowledge any "serious reliance interests" that the previous policy "engendered" and offer "a reasoned explanation . . . for disregarding" those reliance interests.

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (cleaned up).  The record indicates that USCIS likely failed to satisfy even these basic requirements.

In its barebones explanation, USCIS stated that a sweeping, indefinite suspension of application processing was necessary "to ensure all [noncitizens] from high-risk countries of concern who entered the United States do not pose a threat to national security or public safety." January Memo at 3.  In support, the agency cited to the Presidential Proclamations restricting the entry of individuals from those countries into the United States pending a comprehensive review of vetting procedures.  *See id.*  But those Proclamations address a different problem than the one facing USCIS.  Although a "rational connection plausibly exists" between national security and restricting who may enter the country, USCIS never explained how the same interest is served by withholding employment authorization from people "*who have already been admitted to the United States.*"  *Bowser*, 2026 WL 555624, at *7 (cleaned up) (emphasis in original).  It is not clear how denying a work permit to someone already living in the United States reduces the potential risk to national security.  USCIS may be right that applicants from certain countries need more vetting, but they have not explained why applicants already in the country cannot legally work in the interim.  To the extent there is an explanation, USCIS did not provide it and this court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm*, 463 U.S. at 43.

Worse yet, the policy memos "fail to sufficiently grapple with the serious reliance interests at stake as a result" of abandoning USCIS's prior policy of quickly adjudicating EAD applications for people who had petitioned for adjustment of status.  *Bowser*, 2026 WL 555624, at *8.  Plaintiff's situation illustrates exactly what the agency failed to reckon with.  She "dedicated years of effort, sacrifice, and substantial financial resources to pursue a medical

career in the United States, including completing required examinations and building a competitive application for residency." Pouri Decl. ¶ 7. Relying on USCIS's established practice, she submitted her applications for adjustment of status and employment authorization in November 2025—only for USCIS to suddenly upend that practice before her applications could be timely adjudicated. *Id.* ¶ 2. Without employment authorization, she will lose her residency, and will not be able to obtain one for at least another year—a significant setback after years of struggle. *Id.* ¶ 8.

To be sure, USCIS stated that its indefinite suspension "may result in delay to the adjudication of some pending applications," that it "weighed that consequence against the urgent need for the agency to ensure that applicants are vetted," and that "the burden of processing delays that will fall on some applicants is necessary and appropriate . . . when weighed against . . . national security." January Memo at 4. But this is "plainly conclusory." *Bowser*, 2026 WL 555624, at *8. And "conclusory statements that USCIS 'considered' the negative consequences of the adjudicatory hold and 'weighed' the competing interests do not constitute a 'reasoned explanation' where USCIS, neither in the Policy Memoranda nor the corresponding administrative records, explained how it weighed the competing interests or how it concluded that the burdens imposed by the adjudicatory hold were 'necessary and appropriate.'" *Saghafi*, 2026 WL 1127468, at *9. Nowhere do the policy memos "actually reflect that the agency considered the professional and other consequences and burdens imposed on applicants such as Plaintiff[]." *Varniab*, 2026 WL 485490, at *19. Finally, the policy memos "also provide no indication that USCIS considered 'alternatives within the ambit of the existing policy' to an indefinite adjudicatory hold on all" EAD applications "filed by noncitizens from countries of identified concern." *Saghafi*, 2026 WL 1127468, at *10 (quoting *DHS v. Regents of the Univ. of*

*Cal.*, 591 U.S. 1, 30 (2020)) (cleaned up).  Therefore, Plaintiff is likely to succeed on her claim that the policy memos are arbitrary and capricious.

### iii.   Unreasonable Delay

The APA requires an agency "to conclude a matter presented to it" "within a reasonable time."  5 U.S.C. § 555(b).  It further "authorizes [a reviewing] court to 'compel agency action unlawfully withheld or unreasonably delayed.'"  *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (quoting 5 U.S.C. § 706(1)).  A "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  If the agency is required to take the action, courts analyze whether the agency's delay has been unreasonable using the six factors laid out in *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)—the "*TRAC* factors."  These "factors are not ironclad, but rather are intended to provide useful guidance in assessing claims of agency delay."  *In re Core Commc'ns*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

Defendants do not dispute that they have a mandatory duty to timely adjudicate applications for employment authorization.  *See Verma v. USCIS*, 2020 WL 7495286, at *7 (D.D.C. Dec. 18, 2020) (noting that federal law "clearly envisions that USCIS *will* adjudicate all covered applications for immigration benefits, including . . . Form I-765 applications . . . within six months of filing" (quoting *Nibber v. USCIS*, 2020 WL 7360215, at *6 (D.D.C. Dec. 15, 2020) (emphasis added)); *see also Varniab*, 2026 WL 485490, at *12 ("[A]lthough Defendants have discretion as to whether to grant or deny particular applications for immigration benefits, they do not have discretion to indefinitely and categorically delay or withhold adjudication of such applications.").  Instead, Defendants contend that their nearly seven-month delay in adjudicating Plaintiff's application "is not long enough" to establish a "viable" claim for

unreasonable delay.  Defs.' Opp'n at 20.  The court disagrees.  Plaintiff is likely to succeed on her § 706(1) claim.

Although a nearly seven-month holdup would ordinarily be insufficient to establish unreasonable delay, Plaintiff is correct that this is not a "garden-variety" processing delay.  Pl.'s Reply at 11, ECF No. 8.  As the first *TRAC* factor makes clear, "the time agencies take to make decisions *must* be governed by a rule of reason."  *In re Core Commc'ns*, 531 F.3d at 855 (emphasis added).  "The court is not satisfied in this case that Defendants have utilized a rule of reason."  *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 12 (D.D.C. 2024).  To the contrary, Defendants have failed to timely act on Plaintiff's application pursuant to a policy that is likely arbitrary and capricious—"a failure that is 'almost tautologically unreasonable.'"  *Id.* (quoting *Jingjing Liu v. Mayorkas*, 2021 WL 2115209, at *3 (D.D.C. May 25, 2021)).  Although "a first-in, first-out . . . procedure for processing applications can constitute a rule of reason," USCIS's indefinite suspension of processing of applications filed by nationals of certain countries indicates that the agency is not following such a procedure.  *Varniab*, 2026 WL 485490, at *13.  According to recent USCIS data, adjudicating a Form I-765 application based on a pending I-485 adjustment application took a median of 2.2 and 4.3 months in the last two fiscal years respectively.  *See* USCIS, *Historical National Median Processing Time (in Months) for All USCIS Offices*, https://egov.uscis.gov/processing-times/historic-pt (last accessed on May 28, 2026).  Therefore, it appears Plaintiff's nearly seventh-month delay means that she will receive final adjudication of her application "*after* some later-filed applications submitted by applicants from other countries that are not on hold"—not the first in, first out procedure USCIS once followed.  *Varniab*, 2026

WL 485490, at *13 (emphasis in original).[2]  The absence of a rule of reason—the "most important" *TRAC* factor—weighs strongly in favor of a finding of unreasonable delay.  *In re Core Commc'ns*, 531 F.3d at 855.

The second factor—whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed"—also favors Plaintiff.  *In re Core Commc'ns*, 531 F.3d at 855.  Indeed, federal statute "clearly envisions that USCIS will adjudicate all covered applications for immigration benefits, including . . . Form I-765 applications . . . within six months of filing."  *Verma*, 2020 WL 74952896, at *7 (quoting *Nibber*, 2020 WL 7360215, at *6).  Although this precatory sense of Congress language is non-binding, "it still carries some weight in the overall balance."  *Id.* (cleaned up).

"The third and fifth factors concern the impacts of the delay on the plaintiff."  *Ahmed*, 759 F. Supp. 3d at 14.  Specifically, "the third factor identifies whether human health and welfare are at stake—in which case judicial intervention is more justified—and the fifth assesses the nature and extent of the interests prejudiced by delay."  *Id.* (cleaned up).  These factors again favor Plaintiff.  She has averred that her continued inability to work and the potential loss of her residency would exacerbate her and her husband's "significant and ongoing financial hardship."  Pouri Decl. ¶ 6.  She has also indicated that the loss of her residency "would significantly and permanently damage [her] medical career," especially because there "is no guarantee that [she

---

[2]  Although Defendants now represent that Plaintiff has been scheduled for an interview on June 26, this development only arose after the Motion for a Preliminary Injunction was fully briefed, and given the unusual delay associated with Plaintiff's application, the court can only conclude that she was impacted by the indefinite suspension.  *See* Defs.' Notice of Factual Update, ECF No. 11.  Moreover, the June 26 interview would not be enough to help Plaintiff receive an EAD before the start of her residency program.

would] be able to secure another residency position in the future." *Id.* ¶ 8. Such injuries to Plaintiff's material and mental welfare are substantial.

The fourth *TRAC* factor, "the effect on competing agency priorities," likewise indicates that the delay has been unreasonable. *Da Costa v. Immigr. Inv. Prog. Off.*, 80 F.4th 330, 343 (D.C. Cir. 2023). Although the D.C. Circuit has "refused to grant relief . . . where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," this is not a case where granting Plaintiff relief would unfairly benefit Plaintiff at the expense of others who have been waiting longer. *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). To the contrary, applicants from nonrestricted countries have likely been able to receive decisions before Plaintiff because they are from countries not impacted by USCIS's indefinite suspension. Granting Plaintiff relief would only help remedy this unfairness.

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). The court need not assess whether USCIS has "acted with impropriety" because "the lack of plausible allegations of impropriety [would] not weigh against Plaintiff." *Ahmed*, 759 F. Supp. 3d at 14. The court will instead assume this factor is neutral. All other factors are sufficient to establish that Plaintiff is likely to succeed on her claim of unreasonable delay.

b. Irreparable Harm

To establish irreparable harm, a plaintiff must show that (1) the threatened harm is "certain," "great," and "so imminent that there is a clear and present need for equitable relief to prevent" it, and (2) that the harm is "beyond remediation." *League of Women Voters v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (cleaned up). Plaintiff has satisfied both requirements. If USCIS

does not adjudicate her EAD application in the coming days, Plaintiff will lose her residency. Pouri Decl. ¶ 8. She must either start orientation on time or forgo the position altogether. *See id.* Thus, after June 10, a court would be unable to restore the opportunity. And the loss of that hard-earned opportunity will delay Plaintiff's career in American medicine by at least a year, causing significant and long-lasting damage to her professional development. *See id.* Further, she will remain categorically ineligible to work, meaning she will be unable to earn income to alleviate her family's significant economic hardship. *See id.* ¶ 6. "Under the circumstances of this case, including [Plaintiff's] showing of how loss of [] authorization to work will negatively affect [her] own residency timeline and planned career path, [Plaintiff's] imminent loss of work authorization constitutes irreparable harm." *Varniab*, 2026 WL 485490, at *22; *see also Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (holding that "limiting [a plaintiff's] professional opportunities" can constitute irreparable harm).

To be sure, the D.C. Circuit has held that "in the absence of special circumstances, . . . recoverable economic losses are not considered irreparable." *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009) (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995)). But this case both presents "special circumstances" and threatens economic losses that are not recoverable. *Id.* (quoting *Taylor*, 56 F.3d at 1507). First, "the harm here extends beyond ordinary economic injury" because Plaintiff would not only lose one career opportunity but be denied "the legal ability to work at all." *Miot*, 818 F. Supp. 3d at 183. This "implicate[s] Plaintiff's fundamental ability to earn a livelihood, support [her] family, and remain self-sufficient." *Id.* "Plaintiff[] could not simply find another job" as she would remain "categorically barred from lawful employment." *Id.* And Plaintiff's professional development would suffer significantly. *See Brewer*, 757 F.3d at 1068. Moreover, if Plaintiff ultimately

establishes that USCIS's unreasonable delay did cost her the residency, there appears to be no mechanism for Plaintiff to recover damages against USCIS.  *See District of Columbia v. Dep't of Agric.*, 444 F. Supp. 3d 1, 34 (D.D.C. 2020) ("Although as a general rule, economic harm does not constitute irreparable injury, economic loss caused by federal agency action is an exception" because "economic injury caused by federal agency action is unrecoverable because the APA's waiver of sovereign immunity does not extend to damages claims.").

    c.   Balance of Equities and Public Interest Factors

The balance of the equities and the public interest factors "merge where, as here, the Government is the opposing party."  *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  In weighing the equities, this court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (cleaned up).  Here, these factors favor issuance of an injunction.

Not only would Plaintiff experience significant professional and financial hardship if the court withheld relief, but the public would also suffer.  As twenty-four medical associations, including the American College of Physicians and the Association of American Medical Colleges, have noted, USCIS's "indefinite adjudicative holds are forcing physicians to abandon residency programs" in the United States, "leaving already strained communities without access to care."  Pl.'s Ex. B at 1, ECF No. 4-2.  These medical associations have explained that denying work authorization to highly qualified doctors results in "severe and immediate" "consequences" including disruptions to patient care—consequences that "are particularly troubling given the national physician shortage."  *Id.* at 3.

The policy memos, by contrast, "serve[] no public interest." *Susman Godfrey LLP v. Exec. Off. of the Pres.*, 789 F. Supp. 3d 15, 57 (D.D.C. 2025). That is because there "is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters*, 838 F.3d at 12. "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (cleaned up). Accordingly, Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 85 (D.D.C. 2020) (quoting *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)).

To the extent Defendants contend that a preliminary injunction would frustrate national security, the court is not persuaded. It is true that national security is an area where courts "typically defer" to executive judgment. *TikTok Inc.*, 490 F. Supp. 3d at 85. But although Defendants may have adequately explained why entry restrictions advance national security, they have never explained how withholding employment authorization from people "*who have already been admitted to the United States*" protects the homeland. *Bowser*, 2026 WL 555624, at *7 (cleaned up); *see also TikTok Inc.*, 490 F. Supp. 3d at 85 ("Here, the government has provided ample evidence that China presents a significant national security threat, although the specific evidence of the threat posed by Plaintiffs, as well as whether the prohibitions are the only effective way to address that threat, remains less substantial."). USCIS especially has not explained how its security concerns apply with any force to the "narrow, highly vetted population" of which Plaintiff is part: "medical students, resident physicians, and practicing physicians." Pl.'s Ex. B. at 1; *see also Varniab*, 2026 WL 485490, at *24 ("Defendants have not identified any information specific to Plaintiffs to suggest they pose a threat to national security, and in any event, withholding final adjudication of their . . . Form I-765 applications while

Plaintiffs are already in the country would not serve national security interests."). And indeed, the fact that USCIS is still processing applications for "certain scientists and medical researchers" demonstrates that "there is a mechanism already in place to continue to process applications" notwithstanding national security concerns. *Varniab*, 2026 WL 485490, at *24. The equities therefore favor issuance of an injunction.

### III.    CONCLUSION

For the foregoing reasons, the court will GRANT Plaintiff's Motion for a Preliminary Injunction and order USCIS to adjudicate Plaintiff's EAD application within seven days. A separate order will follow this opinion.

Date: May 30, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge